475 P.2d 41

**Bill SPILLERS, d/b/a Spillers Moving and Storage Company, Appellant,**

v.

**COMMISSIONER OF REVENUE, Appellee.**

**No. 462.**

Court of Appeals of New Mexico.

July 24, 1970.

Rehearing Denied Sept. 15, 1970.

Certiorari Denied Oct. 15, 1970.

Malcolm W. deVesty, Franks & deVesty, Albuquerque (Irwin S. Moise, Sutin, Thayer & Browne, Albuquerque, on rehearing), for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Benjamin J. Phillips, Special Asst. Atty. Gen., for appellee.

## OPINION

SPIESS, Chief Judge.

This is an appeal from a decision and order of the Commissioner of Revenue. The order resulted in the imposition of a gross receipts tax upon commissions paid to a resident agent of an interstate carrier of household goods for initiating or "booking" interstate transportation of such goods. The commissions were paid during the year 1968 and the month of February, 1969.

The law under which the Commissioner acted and which was applicable to the period was Laws of 1966, Ch. 47, [§§ 72–16A–1 through 72–16A–29, N.M.S.A.1953 (Supp. 1967)]. This Act has in certain respects been amended and in others has been repealed.

The questions on this appeal are (1) whether New Mexico can constitutionally

impose its gross receipts tax upon commissions received by a resident agent of an interstate carrier for initiating an interstate shipment of property, and (2) whether gross receipts of the agent derived from the stated activity are deductible under statutory authority from the gross receipts upon which the tax is imposed.

The facts involved are the subject of a stipulation between Taxpayer (Bill Spillers, d/b/a Spillers Moving and Storage Company) and the Commissioner. The Taxpayer is a common carrier maintaining his principal office in Santa Fe, New Mexico. He is engaged in transporting household goods and in performing supporting services in connection with such transportation. Where the transportation is intrastate Taxpayer performs such transportation and services pursuant to a certificate of convenience and necessity issued by the State of New Mexico. Where such transportation and services involve interstate commerce Taxpayer acts as a franchised agent under contract with Bekins Van Lines Co. of Hillsdale, Illinois, which is authorized to transport household goods in interstate commerce.

In accordance with Taxpayer's agreement with Bekins, he receives twenty per cent of the transportation proceeds for having initiated an interstate order. He likewise receives a percentage of the proceeds for additional services performed by him in connection with such transportation.

The Taxpayer filed with the Commissioner his report of gross receipts for the period involved. He excluded from such receipts commissions received by him for initiating interstate transportation. The Commissioner, following an audit of taxpayer's records, added the amount of such commissions so received to taxable gross receipts and, as stated, imposed a tax thereon.

A case treated by the parties as typical and included within the stipulation is one in which a proposed shipper contacted Taxpayer requesting that his household goods be shipped from Santa Fe, New Mexico, to Lubbock, Texas. Taxpayer, as agent of Bekins, contracted with the shipper for such shipment of his goods through use of a UNIFORM HOUSEHOLD GOODS BILL OF LADING AND EXPENSE BILL. The total transportation charges were $582.20, of which Taxpayer was paid twenty per cent for having initiated the order, or the sum of $116.44. Taxpayer did not include this amount as taxable upon filing his gross receipts return. The Commissioner, however, imposed the gross receipts tax upon this sum, together with others of a like nature.

The gross receipts tax, which is a subject of this appeal, was imposed upon the privilege of engaging in business generally in New Mexico. It is not confined to interstate transactions but is extended to substantially all forms of business activities. The tax is measured by the gross receipts of those so engaged. The purpose of the tax was to provide revenue for public purposes.

"Gross receipts" is defined in Laws of 1966, Ch. 47, § 3, [§ 72–16A–3(E), N.M.S. A.1953 (Supp.1967)], as:

"* * * the total amount of money or the value of other consideration, received from selling property in New Mexico, from leasing property employed in New Mexico, or from performing services in New Mexico, * * *.

" 'Gross receipts,' for the purposes of the business of buying, selling or promoting the purchase, sale or leasing, as factor, agent or broker, on a commission or fee basis, of any property, service, stock, bond or security, includes only the total commissions or fees derived from the business."

Taxpayer first contends that taxing the particular gross receipts violates Article I, Section 8, Clause 3, of the Constitution of the United States (the Commerce Clause) and is, therefore, deductible under § 72–16A–14(H), N.M.S.A.1953 (Supp.1967). This section permits deduction from gross receipts "* * * to the extent that the imposition of the gross receipts tax would be

unlawful under the United States Constitution.". Clearly, if the imposition of the tax upon the particular gross receipts is constitutionally lawful then such receipts are not deductible under this section.

It is undisputed that the receipts in question are transactions related to interstate commerce. Taxpayer argues that a state cannot constitutionally impose a tax on receipts or earnings derived from interstate commerce. To support this rule he cites 17 A.L.R.2d 448 in which the annotator has referred to cases which do lend support to this conclusion. However, in our view, no such absolute rule has been promulgated by decisions of the United States Supreme Court. No specific guides for the exercise of state and local taxation as it applies to interstate commerce have been provided through decisions of the Supreme Court. Uncertainty in this field of taxation is reflected by the statement in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).

"The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation."

Taxation of receipts or income from interstate commerce and related activities has not for that reason alone been declared to be violative of the Commerce Clause. The Supreme Court in General Motors Corp. v. Washington, 377 U.S. 436, 84 S. Ct. 1564, 12 L.Ed.2d 430 (1964), in considering a gross receipts tax imposed by the State of Washington, said:

"We start with the proposition that '[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business.' Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823 (1938). 'Even interstate business

must pay its way,' Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259, 39 S.Ct. 265, 266, 63 L.Ed. 590 (1919); as is evidenced by numerous opinions of this Court. For example, the Court has approved property taxes on the instruments employed in commerce, Western Union Telegraph Co. v. Attorney General, 125 U.S. 530, 88 S.Ct. 961, 31 L.Ed. 790 (1888); on property devoted to interstate transportation fairly apportioned to its use within the State, Pullman's Palace Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891); on profits derived from foreign or interstate commerce by way of a net income tax, William E. Peck & Co. v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049 (1918), and United States Glue Co. v. Oak Creek, 247 U.S. 321, 38 S.Ct., 499, 62 L.Ed. 1135 (1918); by franchise taxes, measured by the net income of a commercially domiciled corporation from interstate commerce attributable to business done in the State and fairly apportioned, Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165 (1920); by a franchise tax measured on a proportional formula on profits of a unitary business manufacturing and selling ale, 'the process of manufacturing resulting in no profits until it ends in sales,' Bass, Ratcliff & Gretton, Ltd. v. State Tax Comm'n, 266 U.S. 271, 282, 45 S.Ct. 82, 84, 69 L.Ed. 282 (1924); by a personal property tax by a domiciliary State on a fleet of airplanes whose home port was in the taxing State, despite the fact that personal property taxes were paid on part of the fleet in other States, Northwest Airlines, Inc. v. Minnesota, 322 U.S. 292, 64 S.Ct. 950, 88 L. Ed. 1283 (1944); by a net income tax on revenues derived from interstate commerce where fairly apportioned to business activities within the State, Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); and by a franchise tax levied on an express company, in lieu of taxes upon intangibles or rolling

stock, measured by gross receipts, fairly apportioned, and derived from transportation within the State, Railway Express Agency, Inc. v. Virginia, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed.2d 450 (1959).

"However, local taxes measured by gross receipts from interstate commerce have not always fared as well. Because every State has equal rights when taxing the commerce it touches, there exists the danger that such taxes can impose cumulative burdens upon interstate transactions which are not presented to local commerce. Cf. Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 170, 74 S.Ct. 396, 98 L.Ed. 583 (1954); Philadelphia & Southern S. S. Co. v. Pennsylvania, 122 U.S. 326, 346, 7 S.Ct. 1118, 30 L.Ed. 1200 (1887). Such burdens would destroy interstate commerce and encourage the re-erection of those trade barriers which made the Commerce Clause necessary. Cf. Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 521–522, 55 S.Ct. 120, 79 L.Ed. 632 (1935). And in this connection, we have specifically held that interstate commerce cannot be subjected to the burden of 'multiple taxation.' Michigan-Wisconsin Pipe Line Co. v. Calvert, supra, at 170, [74 S.Ct. 396, 98 L.Ed. 583]. Nevertheless, as we have seen, it is well established that taxation measured by gross receipts is constitutionally proper if it is fairly apportioned."

Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), in striking down a franchise tax as applied to a foreign corporation engaged exclusively in interstate commerce, said:

"Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business, and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate. [citations omitted] The same is true where the taxpayer's business activity is local in nature, such as the transportation of passengers between points within the same state, although including interstate travel, * * *."

As has been shown, all interstate commerce is not per se immune from taxation. To attain such immunity a showing must be made of multiple taxation or the lack of a local taxable incident. Such showing is essential to classify the tax as one unduly burdensome to interstate commerce. EVCO v. Jones, 81 N.M. 724, 472 P.2d 987, decided May 28, 1970; Bell Telephone Laboratories, Inc. v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966).

We are unable to perceive, nor has Taxpayer shown how another state could impose a tax upon the receipts resulting from initiating the particular interstate transportation. As we have stated, the tax imposed is not aimed solely at interstate commerce or an activity connected therewith, but applies to gross receipts derived from substantially all taxpayers on account of services rendered or performed within the State of New Mexico. The taxpayer is a resident of New Mexico doing business within the State and the recipient of all benefits this State affords every citizen. The receipts taxed are receipts from the local incident of "booking" or initiating the transaction. The following language in General Motors Corp. v. Washington, supra, is pertinent here.

"A careful analysis of the cases in this field teaches that the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. * * * [W]e look to the taxpayer's

business activities within the State, i.e., the local incidents, to determine if the gross receipts from sales therein may be fairly related to those activities."

We conclude that the imposition of the tax involved does not violate the Constitution of the United States and consequently is not properly deductible under § 72–16A–14(H), supra. Authorities cited by Taxpayer, in our opinion, do not compel a different conclusion.

■ We next consider Taxpayer's contention that the gross receipts derived from initiating or "booking" the interstate transportation of the household goods are deductible under § 72–16A–14(I), N.M.S.A. 1953 (Supp.1967).

"I. Receipts from transporting persons or property under a single contract from one point to another in this state may be deducted from gross receipts when such persons or property, including any special or extra service reasonably necessary in connection therewith, is being transported in interstate or foreign commerce."

The Commissioner contends that the language of the statute is not broad enough to permit deduction of receipts not resulting from act or acts of actual transportation. We agree with this interpretation. In Reed v. Jones, 81 N.M. 481, 468 P.2d 882 (Ct.App.1970), we held that the burden rests upon the taxpayer "* * * to establish clearly his right to the deduction and the intention to authorize the deduction claimed by the taxpayer must be clearly and unambiguously expressed in the statute."

Based upon the rules expressed above, it is our conclusion that the receipts to be deductible must result from an act or acts of transportation as distinguished from receipts derived from the negotiation of an agreement under which transportation may result. This statute is not sufficiently broad in language when considered under the rule of strict construction to authorize a deduction of receipts from the initiation of an agreement for transportation.

For the reasons stated we conclude that receipts from negotiating interstate transportation under the circumstances should not be deducted as claimed by Taxpayer in computing his tax liability to the State, City of Santa Fe and County of Santa Fe.

The decision and order of the Commissioner is accordingly affirmed.

It is so ordered.

OMAN and WOOD, JJ., concur.